JUDGE STEIN                    07 CV 10678

Brett E. Lewis (BL 6812)
LEWIS & HAND LLP
45 Main Street, Suite 818
Brooklyn, New York 11201
Tel. (718) 243-9325
Fax. (718) 243-9326
brett@lewishand.com
*Attorneys for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----

COMPREHENSIVE NETWORK, INC.,
COMPREHENSIVE RESOURCES, INC., and
COMPREHENSIVE COUNSELING SERVICES, INC.,

              Plaintiffs,

              vs.

THE COMPREHENSIVE CENTER, LLC, a/k/a THE
COMPREHENSIVE CENTER FOR
REHABILITATION, a/k/a COMPREHENSIVE KIDS
DEVELOPMENTAL SCHOOL, and
COMPREHENSIVE STAFFING SOLUTIONS, LLC.,

              Defendants,

----

07 CIV. _____

**COMPLAINT AND
JURY DEMAND**

       Plaintiffs, Comprehensive Network, Inc., Comprehensive Resources, Inc., and

Comprehensive Counseling Services, Inc., (collectively, "Comprehensive"), by its attorneys,

Lewis & Hand LLP, for its complaint, against Defendants: The Comprehensive Center, LLC,

a/k/a The Comprehensive Center for Rehabilitation, a/k/a Comprehensive Kids Developmental

School, and Comprehensive Staffing Solutions, LLC, (collectively "Comprehensive Center"), allege as follows:

## NATURE OF ACTION

1.     This action arises from Defendants' willful infringement of Plaintiff's COMPREHENSIVE NETWORK, COMPREHENSIVE RESOURCES, COMPREHENSIVENETWORK.COM, COMPREHENSIVENET.COM, COMPREHENSIVE COUNSELING SERVICES, COMPREHENSIVE PSYCHOLOGICAL SERVICES, COMPREHENSIVE ENRICHMENT, and COMPREHENSIVE ENRICHMENT CENTER family of marks (the "COMPREHENSIVE Marks").

## JURISDICTION AND VENUE

2.     Plaintiff Comprehensive brings this action for trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and trademark infringement and unfair competition in violation of the common law of the State of New York and the several states of the United States.

3.     Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question, as well as 15 U.S.C. §1121(a), and 28 U.S.C. §§ 1338(a) and (b), giving this Court original and exclusive jurisdiction in a civil action arising under the trademark laws of the United States.

4.     This Court has personal jurisdiction over the Defendants pursuant to Sections 301 and 302 of the New York Civil Practice Law and Rules.

5.      Venue in this Court is based upon 28 U.S.C. §1391(b) and 28 U.S.C. §1400, in that Defendants' principal place of business is in this District and the acts of infringement complained of herein occurred in this District among others.

## THE PARTIES

6.      Plaintiffs are New York Corporations, with a principal place of business at 1663 East 17th Street, Brooklyn, NY 11229.

7.      Defendants are Limited Liability Corporations of the State of New York with an address at 460 Grand Street, New York, NY 10002.

## FACTUAL BACKGROUND

8.      Plaintiff Comprehensive is one of the leading staffing agencies of health professionals and therapists to health care facilities, public schools systems, private schools, early intervention programs, and government and business organizations in the tri-state area.

9.      Comprehensive has done business under a family of COMPREHENSIVE marks since 1985. Comprehensive Counseling Services, Inc., Comprehensive Resources, Inc. and the participating companies of Comprehensive Network, Inc., have been under contract with the New York City Department of Education ("DOE"), in the greater New York metropolitan area since 1985.

10.     Under these contracts, Comprehensive has provided speech language pathologists, occupational therapists, physical therapists, registered nurses, psychologists, social workers, guidance counselors, and special education educators, among others, who have provided Evaluation and Related Services to the schools and pre-schools in the DOE system.

11.    COMPREHENSIVE is an inherently distinctive identifier of source because it is either suggestive or arbitrary in relation to the services it provides.    In addition, the COMPREHENSIVE Mark has acquired secondary meaning through substantial and continuous use in interstate commerce.

12.    Comprehensive, doing business under the COMPREHENSIVE Marks, has earned a reputation for excellence in its field over the course of twenty consecutive years of use in commerce.    In that time, Comprehensive has earned tens of millions of dollars in revenues, working with over 10,000 therapists, healthcare and education professionals, and serving over 50,000 children in the New York Metropolitan area.

13.    Comprehensive has also advertised the COMPREHENSIVE marks extensively in newspapers and magazines, such as the New York Times, Advance for Speech Language Pathologists & Audiologists, Advance for Occupational Therapists, Advance for Physical Therapists, Advance for Nurses, and Nursing Spectrum, and has sent out hundreds of thousands of mailers and flyers, spending well over $1,000,000 on marketing and promotions during the past twenty years.    Comprehensive also uses its trademarks in its <ComprehensiveNet.com> domain name and on its website, located at http://www.ComprehensiveNet.com.

14.    As a result, Comprehensive has earned common law rights in its COMPREHENSIVE Marks, based on its extensive and continuous use in commerce of those terms as a designation of source of origin of the services it provides.

15.    Plaintiff's application for registration before the United States Patent and Trademark Office ("USPTO") for the mark, COMPREHENSIVE NETWORK (Ser. No. 77/121,518) has been published without opposition and awaits registration.    Additionally Plaintiff's application for the COMPREHENSIVENET mark (Ser. No. 77/121,501) has been

approved for publication in the Official Gazette.  Both marks were found to be inherently distinctive by the USPTO.

16.     In short, Comprehensive has invested substantial time, effort and resources developing its brands under its COMPREHENSIVE Marks, which embody, reflect and convey the substantial goodwill that Comprehensive has accrued during the past twenty years.

## DEFENDANTS' WRONGFUL ACTS

17.     In or about 1998, Nathan Sklar contacted Dr. Joseph Geliebter, the Executive Director of Comprehensive, while looking for a job.  During the ensuing phone conversation, Mr. Sklar remarked to Dr. Geliebter that he thought that "COMPREHENSIVE" was a "great name."  At some point, thereafter, Mr. Sklar founded his own company, doing business under the confusingly similar name, COMPREHENSIVE CENTER.

18.     Upon information and belief, Defendant Comprehensive Center did not begin to directly compete with Comprehensive until in or about February 2007.    At that time, Comprehensive Center applied for the same DOE contracts, that is, Related Services Plus General Nursing Services Contract for 2007-2010 and Provision of Assessments Contract for 2007-2010, that Comprehensive has been awarded and providing services under for the past 20 years.    When Comprehensive Center bridged the gap between services offered by the respective companies, it resulted in several instances of actual confusion, which caused actual harm, and resulted in considerable financial injury to Comprehensive.

19.     Specifically, on March 5, 2007, the DOE sent an email to vendors for a Meet and Greet for the District 75/Citywide program, which is a specialized school district serving the

special needs student population, many of whom receive multiple services. Comprehensive was not listed on the email as a recipient, but Defendant Comprehensive Center was.

20.    The DOE did not deliberately leave Comprehensive off the list of invitees. Instead, the DOE was confused – it believed that Comprehensive Center was Comprehensive. Fortunately, Comprehensive inquired about the meeting and was notified when and where it would be taking place.  At the DOE meeting on March 26, 2007, Ikimme Parker, a Coordination Clerk with Comprehensive, first learned that there was "another Comprehensive," which she memorialized in a letter by the same date.   On March 28, 2007, Maria Leo, Director of ORCS/District 75, confirmed that the DOE had been confused by Comprehensive Center's use of "COMPREHENSIVE" as a mark.

21.    An additional incidence of actual confusion by the DOE occurred on March 12, 2007 when Winnie Ng, an auditor from the DOE Auditor General's office called Dr. Joseph Geliebter, principal of Comprehensive Resources, Inc., regarding an inadequacy in Comprehensive Center's financial submissions.  It was only after much back and forth inquiry by Dr. Geliebter that it became clear that the inquiry was misdirected.  Ms. Ng believed that Comprehensive Center was an entity owned by Dr. Geliebter as one of the Comprehensive family of entities. She then looked up the accountant's report, which listed the principal of Comprehensive Center as "Nosson Sklar."

22.    In addition to the foregoing, there have been other instances of actual confusion. For example, upon information and belief, confusion at the DOE resulted in Comprehensive's affiliate, CareNet Group, Inc., losing out on a number of contracts on which Comprehensive bid. The DOE counted the Comprehensive and Comprehensive Center companies as a single entity, which made Comprehensive ineligible for consideration on several contracts on which it had bid.

23.     Defendant   also   uses   confusingly   similar   domain   names,   such   as
<ComprehensiveCenter.com> and <ComprehensiveKids.org> to market and promote its
confusingly similar trade name.

24.     Further, upon information and belief, therapists, healthcare and education
professionals have also been confused upon encountering Comprehensive Center's solicitations
into believing that Comprehensive Center's "Comprehensive" entities are sponsored by,
affiliated with, or run by Comprehensive.

25.     That there is such confusion in the market place is not surprising because Mr.
Sklar   and   Comprehensive   Center   use,   as   their   own,   Plaintiff   Comprehensive's
COMPREHENSIVE Marks in the same manner as Comprehensive, i.e., to define a family of
related   companies.      Defendant   Comprehensive   Center   also   uses   the   single   word,
"COMPREHENSIVE," on the telephone, on its <ComprehensiveCenter.com> Web site and
otherwise, to refer to its own competing COMPREHENSIVE network of companies.

26.     The services offered by both companies are now precisely the same, in precisely
the same market.   Both companies offer speech language pathology, occupational therapy,
physical therapy, counseling, sensory integration, and nursing and healthcare services.   Both
companies are located in New York City, and both companies compete to provide the same exact
services under the same exact DOE contracts.

27.     In fact, upon information and belief, the DOE recently, because of the confusion
created by Comprehensive Center, mistakenly did not award contracts, valued in the millions of
dollars, to Comprehensive. They believed that Comprehensive Center was Comprehensive and
awarded contracts to Comprehensive Center, instead.

28.     Comprehensive is one of the DOE's largest vendors in the fields of healthcare, therapist and education staffing.  That the DOE, itself, confused Comprehensive Center with Comprehensive, speaks volumes.  If the DOE was confused – multiple times – it is likely that Comprehensive's therapists and clients will be confused into believing that Comprehensive Center is Comprehensive, or is sponsored, endorsed or affiliated with Comprehensive, as well.

29.     It is no coincidence that consumers are confused because Comprehensive Center intended to profit from Comprehensive's goodwill.  Comprehensive Center had *actual knowledge* of Comprehensive's Marks long before it adopted confusingly similar marks as its own, and has repeatedly refused to cease doing so.

30.     In March 2007, Dr. Geliebter asked Mr. Sklar to cease use of his infringing Comprehensive marks.  Mr. Sklar declined to stop.  By letter dated May 1, 2007, counsel requested that Mr. Sklar's companies cease such infringing conduct.  Despite numerous subsequent requests that Defendant do so, Comprehensive Center has continued to aggressively market its infringing brand, and has only accelerated the pace, scope and harm of its infringement. After Comprehensive's final cease and desist letter, in September 2007, failed to elicit a response from Comprehensive Center's attorney, Plaintif had no choice but to file this action.

31.     Accordingly, Comprehensive Center has acted in manifest bad faith in both adopting the COMPREHENSIVE Marks as its own and aggressively marketing them – even after Comprehensive requested that Comprehensive Center abandon its use of the Comprehensive Marks.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement and Unfair Competition)

### 15 U.S.C. §1125(a).

32.    Comprehensive realleges paragraphs 1-31 of this Complaint.

33.    The acts of Comprehensive Center, as set forth herein, constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Comprehensive Center's and Comprehensive's services, each by the other.

34.    Comprehensive Center's acts, as set forth herein, constitute use in commerce of words, terms, names, symbols and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading descriptions of fact in commercial advertising or promotion that misrepresent the nature, characteristics or qualities of Comprehensive Center's services or other commercial activities.

35.    Comprehensive Center's acts, as set forth herein, constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

36.    Comprehensive Center's acts, as set forth herein, were willfully intended to trade on the reputation and goodwill associated with Comprehensive's COMPREHENSIVE Marks.

37.    Comprehensive Center's acts, as set forth herein, have caused, and are continuing to cause, great and irreparable harm to Comprehensive. Unless permanently restrained by the Court, such irreparable harm will continue.

38. The above actions constitute willful acts of Trademark Infringement and Unfair Competition under 15 U.S.C. §1125(a), and, as such, Comprehensive demands an injunction enjoining Defendants from future violative conduct, as well as attorneys fees, costs, disgorgement of Defendants' profits, and an award of damages, in an amount to be determined at trial, not exceeding three times the amount of actual damages under 15 U.S.C. §§ 1111, 1114, and 1117(a).

## SECOND CLAIM FOR RELIEF

### (Common Law State Trademark Infringement and Unfair Competition)

39.    Comprehensive realleges paragraphs 1-38 of this Complaint.

40.    Comprehensive Center's acts constitute the use of a designation that is likely to cause confusion amongst consumers as to the source, sponsorship, endorsement or affiliation of Comprehensive Center's services.

41.    Comprehensive Center has willfully copied and infringed Comprehensive's Marks, creating actual confusion, a likelihood of confusion amongst consumers as to source, sponsorship, affiliation or endorsement.

42.    Comprehensive Center's acts constitute trademark infringement and unfair competition in violation of the common law of the State of New York as well as the several states of the United States of America.

43.    Comprehensive Center's acts have caused, and are continuing to cause, great and irreparable harm to Comprehensive.    Unless permanently restrained by this Court, such irreparable harm will continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Comprehensive requests judgment against Defendant Comprehensive Center as follows:

1.    That Comprehensive Center, and each of its subsidiaries and affiliates, and their respective officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from:

      a.    Using on or in connection with any healthcare or education related service, the Infringing Marks or the designation "Comprehensive" or any colorable imitation thereof or any designation confusingly similar thereto:

      b.    Representing by any means whatsoever, directly or indirectly, or doing any other acts calculated or likely to cause confusion, mistake or to deceive the public into believing that Comprehensive Center's services are the services of Comprehensive, or that Comprehensive's services are the services of Comprehensive Center, or that there is any affiliation or connection between Comprehensive or Comprehensive's services and Comprehensive Center or Comprehensive Center's services, and from otherwise unfairly competing with Comprehensive; and

      c.    Seeking registration for the Infringing Marks, any mark containing Comprehensive, or any colorable imitation thereof or any mark confusingly similar thereto.

      d.    Seeking to register, license, or use any domain names that include the word COMPREHENSIVE, or any term or domain name confusingly similar thereto.

2.      That Comprehensive Center be directed to file with this Court and to serve upon Comprehensive within thirty (30) days after service upon Comprehensive Center of this Court's injunction issued in this action, a written report by Comprehensive Center, signed under oath, setting forth in detail the manner in which Comprehensive Center has complied with the injunction.

3.      That Comprehensive Center be directed to transfer the registration of any domain names featuring the word "Comprehensive," and an injunction against Comprehensive Center using any identical or confusingly similar domain names.

4.      That Comprehensive recover its damages sustained as a result of Comprehensive Center's unlawful acts together with an accounting of Comprehensive Center's profits arising from such acts, in an amount to be determined at trial, and that the Court exercise its discretion and enter a judgment for such additional sums as the Court shall find to be just, according to the egregious nature of the acts of Comprehensive Center.

5.      That Comprehensive recover treble damages under 15 U.S.C. § 1117 by reason of the willful and deliberate acts of federal trademark infringement and unfair competition by Comprehensive Center.

6.      That Comprehensive recover its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

7.      That Comprehensive recover its taxable costs and disbursements herein.

8.      That the Court award Comprehensive any and all further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff Comprehensive hereby demands trial by jury, pursuant to Fed. R. Civ. P. 38(b), for all issues so triable.

Dated: Brooklyn, New York
　　　　November 28, 2007

LEWIS & HAND LLP

By: _____
Brett E. Lewis (BL 6812)
45 Main Street, Suite 818
Brooklyn, New York 11201
(718) 243-9325 tel.
(718) 243-9326 fax.
brett@lewishand.com
*Attorneys for Plaintiff*